OPINION OF THE COURT
Herbert Kramer, J.
This 12-year-old foreclosure action has had a long and checkered history and many issues have surfaced.
Holdings
I. This court holds that in any case where an auction sale has been scheduled more than one year after the entry of the judgment of foreclosure and sale, the notice of sale is invalid and the Clerk of this court is directed to reject it, unless an amended and updated order of reference and a supplementary foreclosure judgment reflecting the corrected amount is provided.
II. Additionally, this court holds that bid deposits which may constitute liquidated damages when a bidder defaults under the notice of sale provisions are intended to provide a setoff against the damages incurred by the plaintiff in the form of additional *929 legal fees, referee fees and the interest running on the mortgage debt from the time of the auction until the declaration of default.
III. This court further holds that where the mortgagee is the purchaser, the mortgagee who has delayed the closing cannot continue to charge interest during the period that the closing is delayed.
IV Finally, this court holds that the purchaser who does not timely close is chargeable with judgment interest on the bid amount (less the bidder’s deposit) under CPLR 5001 (a), (b) as well as under the terms of sale. In the instant matter, this statutory interest shall run from 30 days after the successful auction bid until the time the instant motion was made. However, where a foreclosure matter is governed by the current Kings County foreclosure order, interest chargeable to the successful bidder shall run from the 45th day after the auction absent a stipulated adjournment.
Plaintiff moves for an order directing the referee to close title with him. He alleges that the eight month long delay between the auction and the instant motion was caused by the fact that the title company would not clear title because of two unsafe building actions that were filed against the property by the City of New York. He claims that he is now prepared to close. In opposition to the motion, the Estate of Joyce Benjamin, the successor to the owner of the equity of redemption, alleges that the plaintiff as mortgagee was aware or should have been aware of the condition of the buildings and seeks vacatur of the bid and the assessment of costs, expenses, advances and legal fees and the ordering of a new sale.
The Facts
A judgment of foreclosure and sale was entered in this matter in 1996 and a referee to compute was appointed in conjunction therewith. In the intervening years, there were four auction sales. The most recent auction of this property took place on August 15, 2006 and the terms of sale called for a closing on September 15, 2006. The purchaser who is the plaintiff mortgagee did not seek an adjournment, did not appear for a closing and the referee declared plaintiff to be in default of the terms of sale in December of 2006.
Over the course of this lengthy period, additional interest accrued and expenses, including legal expenses, continued to accumulate. In an earlier application which was granted by this *930 court, two previous successful bidders were found to be in default and their bid deposits were forfeited to the plaintiff herein in accordance with this court’s order.
Yet, no application was made for an amended judgment or for a recomputation of the amounts due under the mortgage. Thus while the original judgment of foreclosure and sale allowed only a certain sum for legal fees, the plaintiff mortgagee-purchaser submitted his own accounting in which he adds additional legal fees that were incurred in the interim in an amount that is nearly equivalent to the legal fees allowed in the original judgment. Moreover he includes referee fees that he apparently paid in conjunction with the two failed auctions at a rate that was far beyond what was allowed in the governing judgment of foreclosure and sale. Moreover, the plaintiff should not have paid those fees without court order. Plaintiff also calculates interest on the judgment for the period in which he failed to close.
Analysis
I.A crucial component of the foreclosure process which is often conducted as an ex parte proceeding is the referee’s accounting — one that is done prejudgment providing a detailed snapshot of the mortgage debt. This calculation done by an impartial appointee of the court ensures the reliability and fairness of the foreclosure proceeding. It serves the function of accurately advising the court of the costs and disbursements expended during the process, thus enabling the court to determine whether the charges were taken in consonance with the law and to ensure that there has been no overreaching. An accurate, impartial, transparent accounting becomes particularly important when the purchaser is not a third party but is the foreclosing mortgage holder and the potential for self-dealing arises.
Accordingly, this court holds that in any case where an auction sale has been scheduled more than one year after the entry of the judgment of foreclosure and sale, the notice of sale is invalid and the Clerk of this court is directed to reject it, unless an amended and updated reference and a supplementary foreclosure judgment reflecting the corrected amount is provided.
II. The calculations as to the current mortgage debt that were submitted by the plaintiff, particularly insofar as they reflect fees and charges connected to the two failed auction bids, are troublesome in light of the fact that the defaulting bidders were directed to forfeit their down payments to the plaintiff herein rather than having them credited against the debts of *931 the owners of the equity of redemption. (See GreenPoint Sav. Bank v Morgan, Sup Ct, Kings County, June 7, 2006, Kramer, J.) There is no question that the down payments are liquidated damages under the notice of sale that belong to plaintiff mortgagee. (See NYCTL 1996-1 Trust v Viola, 2003 NY Slip Op 51272[U] [Sup Ct, Kings County 2003, Barros, J.].) However, it is equally clear that those damages were intended, and this court so holds, to provide a setoff against the damages incurred by the plaintiff in the form of additional legal fees and referee fees necessitated by the various defaults and interest running on the mortgage debt from the time of the auction until the default is declared.
III. Moreover, the interest calculated on the mortgage debt continued to run in the period that the mortgagee-purchaser, who was the successful bidder, defaulted on his closing obligations. This delay should not be charged to the mortgage debt and ultimately subtracted from the surplus funds. Accordingly, this court holds that where the mortgagee is the purchaser, interest on the debt is suspended during the period where the mortgagee has failed to timely close. In this case it is the period from the originally scheduled closing until the instant motion was made.
IV Until this point, we have been concerned with the adjustments to the mortgage debt; now we will turn our attention to the obligations of the successful bidder who failed to close in a timely fashion and turn to the question of what form of penalty should be assessed against this bidder.
As we said in a previous determination where a closing was similarly delayed, this circumstance provides a strong rationale for the policy of the judges of this county which is to speed the transfer of the property into the hands of a new owner by insuring that the time between the auction sale and the closing is not left to the open ended discretion of the parties, but is closely supervised by the court. “Delays in the foreclosure context inevitably leave viable properties in a virtually ownerless limbo state and create the potential for a landscape filled with vacant, decaying edifices, which could well invite further foreclosures and decreasing property values.” (Mortgage Elec. Registration Sys., Inc. v Lizima, 15 Misc 3d 1118[A], 2007 NY Slip Op 50756[U], *2-3 [Sup Ct, Kings County 2007].)
It was largely in response to this problem that the judges of this county revised the judgment of foreclosure and sale form two years ago and placed within it a provision requiring that *932 the closing take place “within forty-five days after such sale unless otherwise stipulated by all parties.” The unfortunate set of facts in the present case is the best proof that the standard court order in this county requiring prompt closing after the auction bid will have a salutary effect on the length of time that property in the foreclosure process is held in limbo. Although the foreclosure order that is currently in use does not govern this proceeding, this court’s concern for the prompt resolution of foreclosure matters guides its determination.
Accordingly, this court is loath to order a new auction under these circumstances as that will simply extend the delay. The better course is to charge the purchaser with statutory interest pursuant to the notice of sale provisions[1] (Grabfelder v Tallman, 36 Misc 247 [Sup Ct, NY County 1901]), and pursuant to the provisions of CPLR 5001.[2]
In the instant matter, this court finds that there was a breach of the performance of the notice of sale provisions caused by the purchaser’s failure to seek an adjournment and by the extended delay that ensued in the closing of title on this property. This delay has in fact interfered with the transfer of title to this property and with the establishment of a trust in the form of a surplus monies fund that stands “in the place of the land for all purposes of distribution among persons having vested interests or liens upon the land.” (Sadow v Poskin Realty Corp., 63 Misc *933 2d 499, 502 [Sup Ct, Queens County 1970].) Accordingly, this court holds that the purchaser is chargeable with judgment interest on the bid amount less the bidder’s deposit under this provision as well as under the terms of sale.
This court must now determine an appropriate starting date for the running of the interest. This date is determined by several factors. In this case, the purchaser is the mortgagee. The defendants argue that he knew or should have known of the defects in the property at the time he placed the bid. Such argument lends support for establishing the starting date as the date of the successful auction bid at which time the sale price became fixed and ascertainable. However, the realities of real estate practice dictate a somewhat different result. A title company requires a certain period of time to make its findings and prepare a report. In the present circumstances, it would appear that 30 days from the date of the auction is a sufficient time to allow for this process.
Thus statutory interest shall run from 30 days after the successful auction bid until the time the instant motion was made. This shall be the rule under our facts.
However, where a foreclosure matter is governed by the current Kings County foreclosure order, interest chargeable to the successful bidder shall run from the 45th day after the auction absent a stipulated adjournment. In all cases, the interest shall be remitted by cashier’s check made payable to the referee who shall include this sum in the calculations of the surplus monies that will ultimately be distributed to the remaining lien holders.
The referee shall recalculate the amount due on this mortgage in accordance with this decision, submit that report to this court, and thereafter reschedule a prompt closing.

. The notice of sale recites in pertinent part:
“If the purchaser requests in writing additional time beyond the closing Date in order to complete the purchase of the premises and the Referee consents to such extension, the purchaser shall be responsible for payment of additional bid interest, at the statutory rate in effect from time to time, on the whole amount of the purchase price, to be calculated from the original Closing Date set forth herein.”

. CPLR 5001 provides in part:
“(a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from, which it shall be computed shall be in the court’s discretion.
“(b) Date from which computed. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date” (emphasis added).